Lisa White Hardwick, Judge
Hernandez Campbell appeals the dismissal of his putative class action lawsuit against Adecco USA, Inc., ("Adecco") for violations of the Fair Credit Reporting Act ("FCRA"). He contends he alleged sufficient facts to establish that he has standing to assert his claims. For reasons explained herein, we affirm, in part, and reverse and remand, in part.
FACTUAL AND PROCEDURAL HISTORY
Campbell applied to work for Adecco, a staffing company with an office in Missouri, in August or September 2015. As part of his application, he electronically signed a document titled "Background Authorization and Release" on September 28, 2015. In the document, Campbell stated that he understood and agreed that, during the application process and, if employed, at any time during employment, Adecco and/or its client may require him to undergo "one or more background investigations including [his] driving record, credit history, criminal records, civil matters, previous employment, education verification as well as other past experiences through various sources such as federal, state and other agencies (including public and private sources) which maintain records concerning [his] past activities." He further stated that he "voluntarily authorize[d]
*118 and consent[ed] to such background investigations." Campbell agreed to release Adecco, its clients, and the consumer reporting agencies from any liability and responsibility arising out of or relating to the background investigation. Additionally, he acknowledged receipt of a "Stand Alone Consumer Notification which indicates that a background investigation report will be requested and used for the purpose of evaluating [him] for employment, promotion, reassignment or retention as an employee." (Emphasis in original.) Lastly, Campbell agreed that, if the information obtained from the background investigation revealed "any false information, omissions or misrepresentations" in his employment application, he understood that he would be ineligible for employment or subject to immediate dismissal. The second page of the document contained disclosures pertaining only to residents of California, Minnesota, Oklahoma, and New York.
The third page of the document provided to Campbell read:
APPLICANT,
PLEASE DETACH THIS DOCUMENT FROM THE PACKET AND TAKE WITH YOU.
CONSUMER NOTIFICATION
Please be advised Adecco and/or its clients may obtain an investigative consumer report (i.e. background check, credit check, etc.[) ] ("Report") from a consumer reporting agency pursuant to the Fair Credit Reporting Act as amended by the Consumer Reporting Reform Act of 1996. The Report is being obtained for the purpose of evaluating you for employment, promotion, reassignment or retention as an employee.
This report may contain information bearing on your credit worthiness, credit standing, credit capacity, character, criminal background, general reputation, personal characteristics, or mode of living form public record sources or through personal interviews with your neighbors, friends or employees. You may also have a right to request additional disclosures regarding the nature and scope of the investigation. This information may also be shared with Adecco's clients in evaluating your eligibility for an assignment with such client.
In November 2015, Campbell received an interview with Adecco. Adecco hired him and placed him at Challenge MFG as a forklift driver and weld operator. Adecco ordered a consumer report on Campbell from First Advantage. First Advantage completed the report in late December 2015. On December 24, 2015, Adecco informed Campbell that he should not report back to work at Challenge MFG and was no longer eligible for employment through Adecco due to information contained in the report from First Advantage.
In January 2016, Campbell filed a putative class action complaint in the Circuit Court of Cole County alleging that Adecco violated the FCRA with regard to the consumer report that it obtained from First Advantage. The FCRA prescribes conditions for furnishing and using consumer reports[1] for employment purposes.
*119 15 U.S.C. § 1681b(b)(2). Specifically, an employer may not procure a consumer report in connection with an employment application unless:
(i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
(ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i) ) the procurement of the report by that person.
Id. Additionally, the FCRA provides that, before taking any adverse action against a consumer based in whole or in part on the report, the employer must provide the consumer with a copy of the report and a description in writing of the consumer's rights. 15 U.S.C. § 1681b(b)(3). Pursuant to the FCRA, a person who fails to comply with any of its requirements is liable to the consumer for, among other things, either actual damages or statutory damages of $100 to $1,000, costs of the action, attorney's fees, and possibly punitive damages. 15 U.S.C. § 1681n(a). In his complaint, Campbell alleged that Adecco did not comply with the FCRA requirements for procuring the consumer report and terminating his employment based upon that report.
Adecco subsequently removed the case to the United States District Court for the Western District of Missouri. While the case was pending before the federal court, Campbell filed an amended complaint in December 2016. In his amended complaint, Campbell asserted three types of claims on behalf of himself and his proposed classes of plaintiffs: (1) Adverse Action; (2) Disclosure; and (3) Authorization.[2]
In his Adverse Action claim, Campbell alleged that Adecco violated the FCRA by failing to provide him a copy of the consumer report that was used to take adverse action against him; failing to provide him a copy of the FCRA-mandated summary of rights; and failing to provide him a reasonable time to address the consumer report and/or any inaccuracies within the report. He asserted that these FCRA violations resulted in an informational injury because he was denied the opportunity to review and discuss the contents of the consumer report before he was terminated, plus lost wages and lost opportunity. In his Disclosure claim, Campbell alleged that Adecco violated the FCRA because the document that Adecco used to obtain a consumer report on him did not consist solely of the disclosure that a consumer report may be obtained for employment purposes. In his Authorization claim, Campbell alleged that the document Adecco used did not actually contain an authorization for Adecco to obtain a consumer report on him for employment purposes and that Adecco never received such an authorization from him. For his Disclosure and Authorization claims, Campbell asserted that these violations resulted in an informational injury because he was not informed that a consumer report may be obtained for employment purposes, and an invasion of his privacy because he did not authorize Adecco's procuring such a report. For all of his claims, Campbell requested *120 statutory damages, punitive damages, attorney's fees, and costs.
Adecco moved to dismiss Campbell's amended complaint in the federal court. Adecco asserted, among other things, that the amended complaint showed that Campbell had not suffered any concrete injury and, therefore, lacked Article III standing sufficient to establish subject matter jurisdiction. In response, Campbell asserted that his amended complaint sufficiently alleged his injuries. Campbell also filed a motion to remand the case back to the Circuit Court of Cole County on the basis that the parties agreed that the federal court lacked subject matter jurisdiction.
The federal court determined that Campbell failed to allege a concrete injury sufficient to establish standing. Specifically, with regard to his Adverse Action claim, the court found that Campbell had failed to allege that the consumer report was inaccurate or that compliance with the FCRA's pre-adverse action notice requirements would have resulted in Adecco's reaching a different conclusion about his qualifications for employment. Therefore, the federal court concluded that "any alleged loss he suffered could not have resulted from Adecco's failure to give him a reasonable amount of time to address what was revealed in [his] consumer report." As for the informational injury asserted in his Disclosure and Authorization claims, the federal court found that Campbell alleged only that Adecco's form was not in the format required by statute, and he did not allege that the form failed to contain the information required by the FCRA. With regard to the invasion of privacy injury asserted in his Disclosure and Authorization claims, the federal court found that Campbell had failed to allege that he or a reasonable person would have been confused by the extraneous information in the consent form or that he would not have signed the form had he known that some information in it was inaccurate. Because Campbell alleged only "bare procedural violations" and not a concrete injury sufficient to establish standing, the court found that it lacked subject matter jurisdiction over his claims. The federal court remanded the case back to the Circuit Court of Cole County.
On remand, Adecco moved to dismiss Campbell's amended complaint for lack of standing and for failure to state a claim upon which relief could be granted. Following a hearing, the circuit court granted Adecco's motion and dismissed the amended complaint with prejudice. Campbell appeals.
STANDARD OF REVIEW
We review a dismissal for lack of standing de novo. Corozzo v. Wal-Mart Stores, Inc. , 531 S.W.3d 566, 572 (Mo. App. 2017). We determine standing as a matter of law by examining the petition " 'along with any other noncontested facts accepted as true by the parties at the time the motion to dismiss was argued.' " Id. (citation omitted). "We construe the pleadings liberally and accept all alleged facts as true and construe them in a light most favorable to the pleader." Id. Because he was the party seeking relief, Campbell bore the burden of establishing that he had standing to assert his claims. Id.
ANALYSIS
In his sole point on appeal, Campbell contends the circuit court erred in dismissing his amended complaint based on lack of standing. A party's standing to bring an action is one of the requirements of justiciability under both federal law and Missouri law. Id. at 574. "[S]tanding is a component of the general requirement of justiciability and is the state analogue to *121 the federal 'case or controversy' requirement." Id. (quoting Schweich v. Nixon , 408 S.W.3d 769, 774 (Mo. banc 2013) ). "Standing requires that a party have a personal stake arising from a threatened or actual injury." Id. (quoting Schweich , 408 S.W.3d at 774 ).
In Corozzo , we addressed the sufficiency of pleaded injuries to establish standing for FCRA violation claims similar to the claims asserted in this case. Like Campbell, the plaintiffs in Corozzo asserted that Wal-Mart's disclosure form violated the FCRA because it "contained extraneous information, inaccurate and misleading statements," and did not provide " 'a clear and conspicuous disclosure in writing in a document that consisted solely of the disclosure that a consumer report may be obtained for employment purposes.' " Id. at 569.
In determining whether the plaintiffs in Corozzo had standing under Missouri law, we first examined the United States Supreme Court's decision in Spokeo, Inc. v. Robins , --- U.S. ----, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016), which directly addressed the standing requirements of a plaintiff alleging an FCRA violation in the absence of actual injury. Corozzo , 531 S.W.3d at 574. In Spokeo , the Court stated that, "[t]o establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." 136 S.Ct. at 1548 (internal quotation omitted). Elaborating on what constitutes a concrete injury, the Court in Spokeo explained that a concrete injury must actually exist, but it may be intangible. Id. at 1548-49. The Court further explained that, even though Congress can identify and elevate intangible harms to "meet minimum Article III requirements," that "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Id. at 1549. Instead, "Article III standing requires a concrete injury even in the context of a statutory violation." Id.
Thus, while Congress's purpose in enacting the FCRA was "to curb the dissemination of false information by adopting procedures designed to decrease that risk," the plaintiff in Spokeo could not satisfy Article III's standing requirements simply "by alleging a bare procedural violation." Id. at 1550. The reason for this, the Court explained, is that "[a] violation of one of the FCRA's procedural requirements may result in no harm," as "not all inaccuracies cause harm or present any material risk of harm." Id. The Court noted that, for example, "[i]t is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." Id.
In addition to examining Spokeo , we also looked to precedent from the Eighth Circuit to determine whether the plaintiffs in Corozzo had alleged concrete injuries. Corozzo , 531 S.W.3d at 574-75. Acknowledging that, as a state court, we are not bound by precedent from the Eighth Circuit, we explained that we " 'may consider it as persuasive authority, particularly where the law at issue is a federal statute that provides concurrent jurisdiction in both state and federal courts,' " and that we do so for the purpose of furthering " 'consistency in the legal standards to be applied by our state courts and the Eighth Circuit if at all possible.' " Id. (citations omitted). With that purpose in mind, we noted that, in Braitberg v. Charter Communications, Inc., 836 F.3d 925, 929-30 (8th Cir. 2016), the Eighth Circuit determined that the plaintiff, who had alleged a violation of a statutory right under the *122 Cable Communications Policy Act but had identified no injury or material risk of harm from that violation, did not satisfy Article III's standing requirement under Spokeo . Corozzo , 531 S.W.3d at 575.
Applying Spokeo and Braitberg to the facts in Corozzo , we found that the plaintiffs failed to plead an actual injury pursuant to Missouri's pleading requirements related to justiciability and standing. Id. In particular, we found that, "[a]ll they allege is that the format of Wal-Mart's Disclosure Form did not comply with the FCRA's disclosure requirement because Wal-Mart's Disclosure Form included extraneous information." Id. at 575-76. We noted allegations that the plaintiffs did not include in their petition:
They did not claim that they did not receive a disclosure or that they did not authorize Wal-Mart to obtain their consumer reports. They did not allege that they did not see the disclosure or that the language of the disclosure was confusing or incomprehensible to them. Nor did they allege that their authorizations were not knowingly given to Wal-Mart due to an alleged FCRA violation.
Id. at 576. We concluded by stating that, "[l]ike the plaintiff in Spokeo , [the plaintiffs] simply cannot satisfy Missouri's standing requirements by alleging 'a bare procedural violation, divorced from any concrete harm.' " Id. (quoting Spokeo , 136 S.Ct. at 1549 ).[3]
Applying the principles articulated in Corozzo to this case, we look first at the sufficiency of Campbell's allegation of injuries in his Adverse Action claim. In this claim, Campbell alleged that Adecco violated the FCRA by failing to provide him a copy of the consumer report and the FCRA-mandated summary of rights and by failing to provide him a reasonable time to address the consumer report and/or any inaccuracies within the report before terminating his employment.
As for his injuries, Campbell asserted that these FCRA violations resulted in an informational injury because he was denied the opportunity to review and discuss the contents of the consumer report before he was terminated, plus lost wages and lost opportunity. Specifically, Campbell alleged that the consumer report was "not maximally accurate" and "contained errors." He further alleged that, if Adecco *123 had provided him a copy of the consumer report and the summary of rights before terminating him, he "may have been able to notify [Adecco] that the report was misleading and/or inaccurate," he "may have been in a position to correct information in the consumer report that appears misleading and/or incorrect," and he "may have been able to maintain his employment and/or maintain his ability to work for [Adecco] at other locations."
Although Campbell contends that these allegations were sufficient to establish a concrete injury, we disagree. Campbell failed to identify what the alleged errors in the consumer report were or how those alleged errors caused him harm or presented a material risk of causing harm. As the Supreme Court noted in Spokeo , "not all inaccuracies cause harm or present any material risk of harm." 136 S.Ct. at 1550. Moreover, Campbell's assertion that, if he had been provided a copy of the consumer report and the summary of rights and had been able to address the alleged errors with Adecco, he "may have been able to maintain his employment and/or maintain his ability to work for [Adecco]," was purely conjectural and hypothetical. (Emphasis added.) "[A] speculative or hypothetical risk is insufficient" to allege a concrete injury. Braitberg , 836 F.3d at 930. Neither Campbell's vague assertion that the consumer report was "not maximally accurate" nor his speculative contention that, absent the FCRA violations, he "may have been able to maintain his employment" alleged an injury that actually existed. Therefore, Campbell failed to allege a concrete injury sufficient to confer standing on his Adverse Action claim. The court properly dismissed this claim.
Looking at Campbell's two remaining claims, he alleged in his Disclosure claim that Adecco violated the FCRA because the document that Adecco used to obtain a consumer report on him did not consist solely of a clear and conspicuous disclosure that a consumer report may be obtained for employment purposes. In his Authorization claim, he alleged that Adecco violated the FCRA because the document that Adecco used to obtain the consumer report did not actually contain an authorization for Adecco to obtain a consumer report on him for employment purposes and that Adecco never received such an authorization from him.
With regard to his injuries on these claims, Campbell alleged that the document that Adecco used to obtain the consumer report contained "extraneous information" that was "confusing to the Plaintiff and would be confusing to a reasonable person." Moreover, he contended that, "[g]iven the overwhelming amount of extraneous, misleading, inaccurate, deceiving, confusing, and illegal information" in the document, "no reasonable person would believe that the document was a disclosure that a consumer report may be obtained for employment purposes." In fact, Campbell asserted that the document "never discloses that a consumer report would be obtained concerning the Plaintiff for employment purposes."[4] Campbell alleged that he never *124 authorized Adecco to obtain a consumer report on him; therefore, Adecco invaded his privacy by obtaining the report without his consent.
Accepting all of these allegations as true, which we must pursuant to our standard of review, we find that they were sufficient to allege a concrete injury. Campbell did not simply complain that the disclosure was not in the statutorily-required format; rather, he contended that Adecco's failure to follow the required format by including extraneous, misleading, and inaccurate information confused him and would confuse a reasonable person such that no reasonable person would believe that the document was a disclosure that a consumer report would be procured. Campbell's contentions that he was confused by the disclosure, that no reasonable person would believe it was a disclosure, and that he never authorized Adecco to obtain a consumer report on him identified actual harms from Adecco's alleged FCRA violations. The harms were that, as a result of the FCRA violations, the disclosure failed to inform Campbell that Adecco intended to obtain a consumer report on him, which would constitute an informational injury, and Adecco procured the consumer report without his authorization, which would constitute an invasion of privacy injury. See Landrum v. Blackbird Enters. , LLC , 214 F.Supp.3d 566, 571-72 (S.D. Tex. 2016). Campbell alleged concrete injuries sufficient to satisfy Missouri's standing requirements on his Disclosure and Authorization claims. Therefore, the circuit court erred in dismissing those claims.
CONCLUSION
The circuit court's judgment dismissing Campbell's Adverse Action claim for lack of standing is affirmed. The judgment dismissing his Disclosure and Authorization claims is reversed and remanded.
All Concur.

The FCRA defines a "consumer report" as:
any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--
(A) credit or insurance to be used primarily for personal, family, or household purposes;
(B) employment purposes; or
(C) any other purpose authorized under section 1681b of this title.
15 U.S.C. § 1681a(d)(1).

Campbell also asserted a fourth count for breach of contract. Because he does not address the dismissal of this claim in his appeal, we will consider the breach of contract claim abandoned.

We recognize that, after Spokeo , federal courts have been split on whether an allegation of a violation of a provision of the FCRA is sufficient, in and of itself, to amount to an Article III injury conferring standing. See, e.g., Anderson v. Wells Fargo Bank, N.A. , 266 F.Supp.3d 1175, 1183-84 (D.S.D. 2017) ; Landrum v. Blackbird Enters., LLC , 214 F.Supp.3d 566, 571-72 (S.D. Tex. 2016) ; Smith v. Ohio State Univ. , 191 F.Supp.3d 750, 756-57 (S.D. Ohio 2016) ; and Frank A. Hirsch Jr. and Kelsey Kingsbery, No Spokeo Redux, No Federal Circuit Unanimity for FCRA Class-Action Standing , 21 No. 17 Consumer Fin. Servs. Law Report 6 (Mar. 6, 2018). The Eighth Circuit, however, has not overruled or limited its holding in Braitberg that a bare procedural violation of a statutory duty, without resulting harm or a material risk of harm from that violation, is insufficient to confer standing. Moreover, we note that several district court opinions from the Western District of Missouri continue to require that plaintiffs asserting FCRA violations also allege that the violations resulted in a concrete harm or a material risk of concrete harm. See, e.g., Alame v. Mergers Mktg. , No. 5:17-CV-06066-BCW, 2017 WL 4167454, at *3 (W.D. Mo. Sept. 19, 2017) ; Davis v. D-W Tool, Inc., No. 2:16-CV-04297-NKL, 2017 WL 1036132, at *4 (W.D. Mo. Mar. 17, 2017). While these unpublished district court opinions are not precedential, Laut v. City of Arnold , 491 S.W.3d 191, 198 (Mo. banc 2016), they indicate that the Eighth Circuit's position on this issue has not changed since Braitberg . Therefore, we see no reason not to follow the analysis set forth in our opinion in Corozzo , which relies, in part, on Braitberg .

We recognize that, in reviewing the same amended complaint, the federal court found that Campbell did "not allege that he or a reasonable person would be confused by the extraneous information" and that Campbell had "not alleged that Adecco's disclosure form did not contain the information required by the FCRA." In our de novo review of the circuit court's dismissal order, however, we find that Campbell makes these allegations in the following paragraphs of his amended complaint:
70. The document used by the Defendant to obtain a consumer report on the Plaintiff never discloses that a consumer report would be obtained concerning the Plaintiff for employment purposes.
71. A reasonable person would not understand from the disclosure form that a consumer report was being obtained for employment purposes.
....
152. The extraneous information contained in the document used by the Defendant to obtain a consumer report is confusing to the Plaintiff and would be confusing to a reasonable person.
153. Given the overwhelming amount of extraneous, misleading, inaccurate, deceiving, confusing, and illegal information in the document used by the Defendant to obtain a consumer report, no reasonable person would believe that the document was a disclosure that a consumer report may be obtained for employment purposes.
154. Given the Defendant's failure to actually disclose that a consumer report may be obtained for employment purposes, no reasonable person would conclude or be expected to conclude that the document was actually a disclosure that a consumer report may be obtained for employment purposes.